ANDREA T. MARTINEZ, United States Attorney (#9313)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone:  (801) 524-5682
Email:   carl.lesueur@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. PRINCESS EZIYI, Defendant. | Case No.  2:22-mj-00225 CMR  FELONY CRIMINAL COMPLAINT (Vio.: 18 U.S.C. § 1956(h))  Judge Cecilia M. Romero  **UNDER SEAL** |

Before the Honorable Cecilia M. Romero, United States Magistrate Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

### COUNT I
18 U.S.C. § 1956(h)
**(Conspiracy to Launder Monetary Instruments)**

1. From a date unknown, but believed to begin no later than on or about May 11, 2018, and to continue to a date unknown but believed to be no earlier than on or about December 9, 2019, in the District of Utah and elsewhere,

**PRINCESS EZIYI**

1

the Defendant herein, did knowingly combine, conspire, and agree with other persons with identities known and unknown to commit offenses against the United States in violation of Title 18, United States Code, Section 1957, to wit:

> (i) to knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the fraudulently obtained proceeds described more fully below, such property having been derived from a specified unlawful activity, that is, mail and wire fraud in violation of Sections 1341 and 1343 of Title 18 of the United States Code, in violation of Title 18, United States Code, Section 1957;

all in violation of Title 18, United States Code, Section 1956(h).

This complaint is made on the basis of investigation consisting of the following:

> 1. I am a Special Agent with the Federal Bureau of Investigation and have been since November 2012. I have been trained to investigate fraud and to investigate Internet related matters during the course of an investigation. I have investigated a number of complex financial fraud cases. Virtually all of my investigations include investigating various aspects and use of the Internet. I have completed the SANS Institute Security Essentials course, an in-depth course covering how the Internet functions and discussing Internet related security vulnerabilities.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause to charge EZIYI for the violations set forth herein and to issue the requested arrest warrant and does not set forth all of my knowledge about this matter.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1956(h) (conspiracy to commit money laundering) have been committed by persons known and unknown, including PRINCESS EZIYI.

4. The information identified in this application is related to accounts and services that appear to have been used by persons involved in romance scams and money laundering. In my experience and training, the purpose of romance scams is to convince multiple elderly females, many of whom are widows, to send thousands of dollars to designated persons and accounts under fraudulent pretenses. In my training and experience, and as a result of witness interviews in this investigation, I understand the romance scam operates as follows.

5. Social manipulators (referred to as "Yahoo Boys") set up fake profiles online. They use the profiles to develop online relationships with victims (whom they refer to as "clients"). They rely on their contacts in the United States ("Pickers") – or on coordinators who have contacts in the United States – to

provide accounts to collect funds from the victims or to add layers to conceal the source and destination of the funds. They tell the Pickers or coordinators the amount they anticipate receiving from the victim to ensure the Picker provides accounts that will not raise red flags for receiving that amount. This first layer operates to conceal the true destination of the funds from both the banks and the romance scam victims. The romance scammers understand that banks will flag for further review wires to certain foreign destinations associated with significant fraud activity. By adding the layer before wiring to Nigeria, the bank will contact the coconspirator responsible for the wire to Nigeria, rather than the victim, to confirm the intent to send funds to Nigeria. Another important element of the scheme is to move the victim's funds through layers of accounts as quickly as possible in order to secure the funds before the victim or bank detect the fraud and attempt to recall the funds.

      6.     From the first layer accounts, the participants then move the money through additional intermediary layers in order to make it more difficult to trace the funds from their origin to destination and vice versa. Sometimes they simply use an intermediary person's U.S. and/or Nigerian bank account. Other times, they use auto sales or other asset transactions. Sometimes, they perform a trade arranged through a broker, sending the fraud proceeds to a Nigerian national's U.S. accounts in exchange for that person sending funds from their Nigerian accounts to the Picker's Nigerian accounts. The scam also sometimes uses other

sophisticated means, such as creation of fictitious businesses or entities to open accounts. These accounts can be used for further obscure the identities of participants, facilitate defrauding the victims, and create cover for a larger volume of high dollar transactions.

      7.    C.S., a seventy-five-year-old widow, reported to law enforcement as follows. She was contacted through online social media by an individual using the Facebook profile "**Aaron.Brain**." "Brain" claimed to be a businessman from Germany working on a construction project in Turkey. "Brain" provided photos of himself and his business. He claimed he was involved in a business venture supplying pipe for a sewer in Turkey. "Brain" provided photographs of industrial pipes in a warehouse. He told C.S. she could make $600,000 in his business venture. He convinced her to send ten checks totaling $275,000 and five wire transfers totaling $81,000, all between 4/2/2018 and 5/17/2018. She sent the checks and wired the money according to instructions she was provided by "Aaron Brain." She provided law enforcement copies of communications about these payments and requests for payments. C.S. and her daughter reported that Brain had defrauded her, and she never received her money back. Review of their communications and his social media profile make it obvious that the persona was manufactured for the purpose of a romance scam as described above.

      8.    Law enforcement agents have obtained copies of C.S.'s electronic communications with the perpetrators, and also copies of electronic

communications among the coconspirators who took her money. These electronic communications including communications involving Coconspirator-1 and Coconspirator-2, individuals who have each pleaded guilty to one count of a money laundering conspiracy in violation of 18 U.S.C. § 1956 and admitted they were knowingly involved in a money laundering conspiracy. Their communications show on May 7, 2018, Coconspirator-1 sent Coconspirator-2 a photograph showing seven checks in the amount of $25,000 signed by C.S., with the payee line blank. The checks included checks numbered 9205, 9206, 9208, 9209, 9211, 9212, and 9213.

9. A confidential witness (CW-1) with personal knowledge of these transactions was interviewed and was assessed to be providing reliable information. CW-1 indicated that PRINCESS EZIYI introduced Coconspirator-U to Coconspirator-1 so PRINCESS EZIYI and Coconspirator-U could be paid to help Coconspirator-1 move money. CW-1 reported that PRINCESS EZIYI understood moving the money was risky, but was told no one involved had been arrested yet. CW-1 indicated that, after these discussions, Coconspirator-1 sent C.S.'s checks by mail from Utah to Coconspirator-U in Georgia. There, according to CW-1, it would have been Coconspirator-U who determined how to deposit and move the money. Coconspirator-U and PRINCESS EZIYI paid Coconspirator-1 a fee from the checks they deposited. CW-1's statements

corroborated the evidence independently gathered by law enforcement, described more fully below.

10. Agents obtained copies of bank records from Bank of America, Suntrust Bank, Associated Credit Union, and Chase Bank. These records included records for accounts where C.S.'s checks were deposited. The bank records indicate some payments from Coconspirator-U to Coconspirator-1 and PRINCESS EZIYI, around the time the checks were deposited into accounts in PRINCESS EZIYI and Coconspirator-U's name. The funds were then either withdrawn by Coconspirator-U or transmitted to a business associated with him, as described more fully below.

11. On May 8, 2018, the day after Coconspirator-1 sent photographs of the checks to Coconspirator-2, a payment of $500 went from Coconspirator-U's Bank of America account to Coconspirator-1. On May 10, 2018, Coconspirator-U sent PRINCESS EZIYI $1,000 from his account at Chase Bank to her account at the same bank.

12. On May 11, 2018, four of C.S.'s checks were deposited as follows. One, check 9208, was deposited to PRINCESS EZIYI's an Associated Credit Union account. Another, check 9213, was deposited to her Chase bank account. Check 9206 was deposited in Coconspirator-U's Bank of America account. Check 9209 was deposited into Coconspirator-U's Suntrust account.

13. On the same day as these deposits, Coconspirator-U sent $1,000 to EZIYI's Chase account, and she sent Coconspirator-1 $500.

14. On May 23, 2018, PRINCESS EZIYI used C.S.'s funds to purchase two cashier's check of $20,000, one from each of her accounts described above. Both checks were made out to Business-1. Bank records for Business-1's account over a five year period indicate these are the only payments Business-1 ever received from PRINCESS EZIYI.

15. Coconspirator-U withdrew $47,210, including funds from C.S.'s check, from his Bank of America account on May 14, 2018. (The remainder of that withdrawal came from money wired to Coconspirator-U's account from D.H., another woman who has reported to law enforcement that she had been the victim of a scam.) Business-1's records show a deposit of $47,200 on that same date. Over the prior thirty days, Coconspirator-U had placed four deposits totaling $40,000 into Business-1's accounts. In total, over approximately 45 days, Coconspirator-U deposited $141,000 into Businss-1's accounts in 23 deposits.

16. Coconspirator-U also used the funds in his Chase account to pay PRINCESS EZIYI $350 on May 21, 2018.

17. Coconspirator-U withdrew approximately $20,000 of the funds from C.S.'s check in his Suntrust Bank account over three transactions from May 16 and May 17, 2018.

18. Law enforcement also recovered November 2018 communications about PRINCESS EZIYI between Coconspirator-1 and Coconspirator-4. Coconspirator 4 has also pleaded guilty to a money laundering conspiracy charge in violation of 18 U.S.C. § 1956. In those communications, Coconspirator-1 and Coconspirator-4, discuss obtaining false passports with a photograph for PRINCESS EZIYI. The communications reflect the names and countries for which these passports were ordered, including Ethiopia, Kenya, and South Africa. The communications reflect that Eziyi provided multiple photographs to facilitate the preparation of the false passports. The communications further reflect that Coconspirator-4 successfully obtained these passports. CW-1 reported that these communications were part of an effort among EZIYI, Coconspirator-1 and Coconspirator 4 to secure passports to enable EZIYI to use aliases to open additional bank accounts to use in the money laundering scheme.

19. I further request that the Court order that this complaint be sealed until further order of the Court. This complaint discusses an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Based on the foregoing information, your affiant respectfully requests that warrant of arrest be issued for PRINCESS EZIYI for violations of 18 U.S.C. § 1956(h).

_____
Affiant,
Special Agent Jule Albretsen

SUBSCRIBED AND SWORN to before me this 7th day of April, 2022.

_____
Cecilia M. Romero
United States MagistrateJudge

APPROVED:

ANDREA T. MARTINEZ
United States Attorney

_____
CARL D. LESUEUR
Assistant United States Attorney